## UNITED STATES v. GREAT NORTHERN RY. CO.

Circuit Court of Appeals, Eighth Circuit.
April 12, 1928.

No. 7978.

**Public lands ⊂=85—Railroad held entitled to recover for transporting marines by route without land grant distance reduction, in absence of request for particular routing.**

In absence of request by government for particular routing of marines from Great Falls, Mont., to Portland, Or., for through traffic between which points only tariff on file with Interstate Commerce Commission was for route through Spokane, by which troops were routed, railroad company is entitled to recover for such transportation as against contention that land grant equalization agreement bound it to transport them by Helena, with combination of basing rate thereto and land grant distance reduction therefrom.

In Error to the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Action by the Great Northern Railway Company against the United States of America. Judgment for plaintiff, and the United States brings error. Affirmed.

O. R. McGuire, Sp. Asst. Atty. Gen. (Herman J. Galloway, Asst. Atty. Gen., Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and Howard W. Ameli, of Washington, D. C., on the brief), for the United States.

Fletcher Rockwood, of St. Paul, Minn. (F. G. Dorety and R. J. Hagman, both of St. Paul, Minn., on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and KENNEDY, District Judge.

25 F.(2d)—61

KENNEDY, District Judge. This is a suit in which the Great Northern Railway Company, plaintiff in the court below, sought to recover of the United States, there defendant, a balance alleged to be due for the transportation of 71 members of the Marine Corps of the United States from Great Falls, in the state of Montana, to Portland, in the state of Oregon. The case was tried to the court without the intervention of a jury, as is required by a statute in such cases, and judgment awarded against the defendant for the sum of $494.12, with interest and costs, upon which the United States brings the case here by proceedings in error.

The case was apparently tried upon a stipulation as to facts, which together with the defined issue appears in the record in the following language:

"1. That the plaintiff is and at all times herein mentioned was a corporation organized under the laws of the state of Minnesota, having its principal offices and place of business at St. Paul, Minnesota. That during the year 1917 and prior and subsequent thereto, the plaintiff was a common carrier of passengers and freight, and owned and operated lines of railway, including a line of railway extending from Great Falls, Mont., to Spokane, Wash., connecting at the last named point with the railroads of the Spokane, Portland & Seattle Railway Company and the Oregon-Washington Railroad & Navigation Company extending from Spokane to Portland, Or. That the plaintiff and said Spokane, Portland & Seattle Railway Company and said Oregon-Washington Railroad & Navigation Company during the year 1917 maintained through passenger service from Great Falls to Portland over the said routes.

"2. That during the months of June, September, and December, 1917, there were issued by officers of the United States Marine Corps to the plaintiff, 27 transportation requests for the travel of 71 men from Great Falls, Mont., to Portland, Or. That of said 27 transportation requests, 14—covering 45 passengers—were routed by the issuing agent of the plaintiff by way of the plaintiff's line in connection with the Spokane, Portland & Seattle Railways Company, and 13—covering 26 passengers—were routed by the issuing agent of the plaintiff by way of the plaintiff's line in connection with the Oregon-Washington Railroad & Navigation Company. That no junction points were specified on said transportation requests.

"3. That at the time said transportation service was rendered by the plaintiff and its connections, there were in effect certain mili-

tary agreements entered into between the defendant and common carriers named therein, including the plaintiff, the Spokane, Portland & Seattle Railway Company and the Oregan-Washington Railroad & Navigation Company, the provisions of which were applicable in determining the proper net fare payable by the government for said service, to wit:

"(1) An agreement known as Military Fare Basis No. 1, Land Grant Equalization Agreement, effective January 1, 1912, as amended by Supplement 12 thereto, effective January 1, 1917. That said Military Fare Basis No. 1, Land Grant Equalization Agreement, contains the following form of agreement:

" 'For transportation of persons for whom the United States government is lawfully entitled to reduced fares over land grant roads, the carriers whose names are signed hereto, when movement is to be made under United States requests for transportation of the issue of the War Department, Navy Department, or Marine Corps, hereby agree * * * to accept lowest net fare * * * as derived through deductions account land grant distance, via a usually traveled route for military traffic, from a lawful fare filed with the Interstate Commerce Commission as applying from point of origin to destination via such route at time of movement.'

"(2) Revised Western Agreement with the Southwestern Passenger Association, Transcontinental Passenger Association, and Western Passenger Association dated April 1, 1916, and effective July 1, 1916, as amended of date of April 1, 1916, effective July 1, 1916. That said Revised Western Agreement authorizes a further deduction of 5 per cent. from the net fares, established in accordance with the provisions of Military Fare Basis No. 1, Land Grant Equalization Agreement, or a deduction of 5 per cent. from the full tariff fares under certain conditions stated therein. That true copies of the agreements above referred to are attached to the stipulation on file in this case.

"4. That the Montana Joint Passenger Tariff No. 45, I. C. C. 32, effective July 20, 1916, a copy of which is attached to said stipulation, quotes joint through fare of $24.85 from Great Falls, Mont., to Portland, Or., via the plaintiff's line from Great Falls to Spokane, and thence to Portland via either the line of the Spokane, Portland & Seattle Railway Company or the Oregon-Washington Railroad & Navigation Company. That said tariff quotes also a basing fare of $21.90

via the Northern Pacific Railway from Helena, Mont., to Portland, Or. That the plaintiff is both an issuing carrier and a participating carrier to said Montana Joint Passenger Tariff No. 45, I. C. C. 32, which tariff recites:

" 'Basing Fares.

" '(5) Fares quoted in this tariff from Spokane, Wash., are for basing purposes only and must not be used in the sale of tickets from that point. Other basing fares shown in this tariff are for basing purposes only and must not be used in the sale of local tickets by agents of the line named.'

"That page 18 of Great Northern Railway Company Local Interdivision Tariff No. 29, I. C. C. 3201, effective from August 20, 1916, to and beyond the time of the service under consideration, quotes a basing fare of $2.95 from Great Falls, Mont., to Helena, Mont. That page 3 of said tariff contains the following:

" 'Application of Tariff.

" 'The following arrangements are authorized for the sale of first class one-way and round trip tickets. The fares named in this tariff apply from stations on the Great Northern Railway, Minot, N. D., to and including Spokane, Wash., to all stations on the Great Northern Railway. Tickets will be sold, fares collected, and baggage checked only to stations at which trains are regularly scheduled to stop.'

"That page 4 of said tariff contains the following:

" 'Basing Fares.

" 'Fares designated with a character indicating that they are basing fares are shown in this tariff only for the construction of through fares from or to points from or to which no through fares are quoted, and they are not to be used for selling purposes. Selling fares are to be found in other tariffs provided for that purpose.'

"That said basing fare of $2.95 was added to the basing fare of $21.00 published by the Northern Pacific Railway Company, supra, by the Auditor for the Navy Department to establish a through gross fare of $24.85 from Great Falls, Mont., to Portland, Or., by way of Helena. That each of said tariffs was duly published and filed with the Interstate Commerce Commission, as required by law and as indicated on the title pages, and remained in force during the year 1917. That during the year 1917 there was no tariff on file with the Interstate Commerce Commission naming a through joint fare for

passenger transportation from Great Falls to Portland by way of the Great Northern Railway to Helena and the Northern Pacific Railway thence to Portland.

"5. That, by reason of the transportation of said 71 members of the Marine Corps of the United States, as aforesaid, there became due and owing to the plaintiff, pursuant to the terms of the written agreements hereinbefore referred to, the sum of $1,553.48, no part of which has been paid, except the sum of $1,059.36, and that there is now due and owing from the defendant to the plaintiff the sum of $494.12."

Shorn of technicalities and argument by innuendo, the situation presented appears to be about as follows: The Great Northern Railway Company, with other carrier companies, had an agreement with the United States concerning the transportation of persons for whom the United States was lawfully entitled to a reduction of fares over land grant roads which was commonly known as the Land-Grant Equalization Agreement for the purpose of permitting competition on the basis of equality among carriers, to the end that those carriers with a lesser proportionate amount of land grant mileage might be able to compete with those carriers having a larger proportion of land grant mileage between given points. By this agreement in its terms set forth the carriers agreed "to accept lowest net fare as derived through deductions account land grant distance, via a usually traveled route for military traffic, from a lawful fare filed with the Interstate Commerce Commission as applying from point of origin to destination via such route at time of movement." A further reduction of 5 per cent. under a Revised Western Agreement entered into the computations, but is not material to the consideration of the point involved here. During certain months in the year 1917 the government requested of the plaintiff railway company transportation for members of its Marine Corps from Great Falls to Portland in the regular course as such governmental requests are made, without designating any particular routing or junction points in such requests. At the time such requests were made the railway company had an established through route with tariffs covering the same filed with the Interstate Commerce Commission from Great Falls to Spokane and then over one of three different lines to Portland. They also had on file what was known as a basing fare from Great Falls to Helena, but no published through fare tariffs from Great Falls to Portland via Helena. In complying with the requests for transportation of the Marines they were routed through Spokane and the transportation charged for by the adoption of the regular published through fare rate from Great Falls to Portland with regular land grant reductions. When payment was sought by the railway company for the transportation the government accountants contended for an awarded payment upon the basis of a transportation from Great Falls to Portland via Helena, because of being entitled to a greater reduction on account of land grant distance over the Northern Pacific Railway from Helena to Portland, which reduced rate combined with the basing rate from Great Falls to Helena would make a lesser rate than that of the routing used in the furnished transportation.

In our opinion the consideration of two elements should control the decision of this case. The first is that no request by the government was made for the transportation of the Marines by any particular routing or through any particular junction points; and the second is that under the government's agreement with the railroad it was to transport troops at its lowest net fare after allowing deductions on account of land grant distances over a usually traveled route as ascertained from a lawful fare filed with the Interstate Commerce Commission from point of origin to destination. There being no request for a particular routing by the government, it must be assumed that such routing would be in accordance with the tariffs on file with the Interstate Commerce Commission. The only tariff on file for through traffic from Great Falls to Portland was that covering the route through Spokane, as these troops were routed. Under these circumstances it seems to us that the railroad furnished the government with the kind of transportation its contract called for and being within the terms of such contract, should be entitled to recover for the transportation furnished. The government seeks to have the contract construed as though the railroad had agreed to transport at the lowest rate between given points, land grant distance reduction considered, rather than in the light of the route covered by the lawful fare filed with the Interstate Commerce Commission. As to whether or not the government upon a special request would have been entitled to have secured transportation for its troops via Helena with a combination of the basing rate from Great Falls to Helena and the land grant distance reduction from Helena to Portland, we are not concerned, under the facts in this case. The railroad fulfilled its

contract with the government and we need look no further.

In our view the case is fairly ruled by the decision of the Supreme Court in Atchison, Topeka & Sante Fé Ry. Co. v. United States, 256 U. S. 205, 41 S. Ct. 456, 65 L. Ed. 891, where Mr. Justice Van Devanter in speaking for the court on page 206 (41 S. Ct. 457) says:

"As to the transportation furnished without a prior contract or special arrangement the accounting officers proceeded on the theory that the collectible rate should be determined by combining the party rate covering a part only of the distance and the individual rate for the remainder and then making any necessary land grant deductions, and not by taking the through individual rate, less any deductions, arising from land grants, as claimed by the company. In this we think the accounting officers erred. The service requested and rendered was a through service. The only rate applicable to a like service for others was the through individual rate. By requesting and accepting the service without some special arrangement for a different rate the United States assented to and became obligated to pay that rate. Under a provision in the Interstate Commerce Act the United States could have arranged with the company for a different and reduced rate, if the company was so disposed (chapter 382, § 22, 25 Stat. 862 [49 USCA § 22; Comp. St. § 8595]); but that was not done. In the absence of such an arrangement, the company's duty to the United States was merely that of serving it at rates no higher than those applied to individuals for like transportation (chapter 278, § 5, 14 Stat. 295), less any lawful land grant deduction. No individual could require that the party rate covering a part only of the distance and the individual rate for the remainder be taken as the through rate, or as the lawful rate for a through service. Neither could the United States do so in the absence of some prior arrangement to that effect. The situation as respects individuals is aptly stated in Conference Ruling No. 268 of the Interstate Commerce Commission, which is as follows:

" 'The tariffs of certain carriers provide a 10-party fare from A to B, but no such fare from B to C. Upon inquiry whether it would be legal to ticket a party of 10 from A to C on the basis of the party fare from A to B and the individual fares from B to C when such combination makes less than the joint through individual fare from A to C: Held that, while a party of 10 acting on their own initiative would have the right to use the party fare from A to B and to purchase such transportation as is available from B to C, the carriers may not ticket them through from A to C on such a combination and thus defeat their own published through fare.' "

A fair construction of the carrier's contract and its published tariffs, in the absence of a request by the government for any particular routing, considered in the light of this decision of the Supreme Court, leads to the conclusion that the judgment of the trial court was correct, and it is therefore affirmed.